Mr. Perry, I please the court, my name is Adam Perry and I represent the appellant Horn. I want to begin by focusing my argument on why any claim of the trustee, whether it's in tort or in contract, must be arbitrated under the doctrine of equitable estoppel. The trustee's brief strongly asserts that he is pursuing a separate malpractice claim, that he's master of his complaint, and that he has, in effect, pled around in a contract claim. Although he has, in fact, also pled a contract claim. As the trustee's brief noted, the trial court did not decide whether he could assert a separate tort claim. And therefore, the trial court did not have to reach the question of whether equitable estoppel would apply to that tort claim. And this court could rule on whether it's a separate tort claim, but it doesn't need to do so, regardless of how this claim is labeled. All of the trustee's claims, whether they're in contract or in tort, require enforcement of the entire contract, because of the two reasons you would expect. There's a direct benefit from trying to rely on the contract, the engagement. That's the only one. And because the engagement letters are going to be required to determine the complaint, in order to see if Horn did what it contracted to do. The trial court, as I said, considered equitable estoppel only with respect to the contract claim, and I will get to that in a moment. But the point here is the trial court did not consider whether equitable estoppel would apply to that tort claim. And since the trustee has relied on it so heavily in its brief, I'll start there. The trustee admits at page 23 and 24 that proof of an engagement is an essential element of his tort claim. And the engagement between Horn and the hospital didn't arise out of thin air. It arose out of the engagement letter. Thus, the tort claim is necessarily taking direct benefit from the engagement letter. But there's another reason, and maybe even more important, one of the engagement letters. No, I think it's a fairly unfair rule, but it's still a pretty clear one in Mississippi that to bind a governmental entity to anything, not just arbitration, but to anything, it has to be spread upon the minutes. And so while it doesn't seem like the best way to run a railroad, this is their system, and people that do business with entities in Mississippi need to know this and need to get their little stuff spread on the minutes. So why doesn't that just end the debate? You can't force someone into an arbitration agreement, and they didn't spread it on the minutes, so they accepted his $48,000 worth of services, but they didn't accept all the other stuff. Let me then turn to the contract and come back to the tort. No, I mean, it's not a matter of a difference between contract and tort. Somewhere in here, there has to be an agreement to arbitrate. And what I'm saying is, as I understand Mississippi law, there never was because it wasn't spread on the minutes. Well, we have a non-signatory trying to sue on it, and we believe that by doing that, as the county could do or a hospital could do, they ratified it, they judicially stopped it. Now, a contract with a governmental entity like the hospital, the agency has two choices. You can either accept the contract, ratify it, and proceed, or you can say it's unenforceable. Nothing in Mississippi law says you can try to enforce any part of it. What does Mississippi law say about this minute rule? Is it a defense, or does it make it void? There's nothing the county can do, or can the county waive it and say we're going to accept it anyway? Oh, it's certainly the county, and there are a lot of cases, Smith, that all you've got to do is ratify it. And, in fact, all you've got to do is just put it on the minutes, and they say we've ratified it. It becomes a contract. Wait a minute. I don't get this. Okay. If we had a contract today and the county next year said, oh, gee, we wish we could enforce that contract, all they have to do is put it in their minutes. But is the burden of being explicit in the minutes any different in a ratification context than it is in an authorization context? Well, if there is no contract, let's assume they have not ratified it, there is nothing to sue on. There is no engagement. They cannot sue on the contract because there is no contract. And that's a good result for us. I don't understand how a lawyer in Mississippi with any kind of a complicated contract can give an opinion that this contract has been duly authorized and is enforceable in accordance with its terms, which is what if you lawyer up a deal, if you have lawyers involved, and you're asked for an opinion on the enforceability of a contract, it would be extremely difficult to give. If you look at the minutes of this hospital, most of the contracts over years and years and years are not attached. Every Mississippi lawyer should know it. But in doing business in small towns, they just sign the contract and sometimes they put it in the minutes, but most often they do not. That's what happens. And how explicit? I mean, I take it here that your answer would be at a minimum, if there's an arbitration clause in it, you better say that on the minutes. My position would be if there's a contract, you better have it on the minutes. It doesn't matter whether it's an arbitration clause or not because no part of it, that's my argument, no part of it is enforceable if it's on the minutes. I've got a fine point here. Is this a defense that the government can raise, or is it void, ob initio, there's nothing they can do? I mean, I'm trying to fit this within the Supreme Court's language about if the government raises a defense to the contract that's available to anybody, then the arbitrator gets to decide the defense. You're to the gateway issue. I'm to the gateway issue. And I sympathize with the trial judge difficulty. The problem is in Mississippi cases, they don't make that distinction as finely as you would wish by using the language that would look far beside that. But if you look what happens, they leave the parties where they are. Nobody can enforce it. There's no case that I know of, and I've read most of, where they go and say, well, there's a void contract, so you paid $48,000 to the auditor. You've got to give it back. Basically, they leave the parties where they are. So I take it, though, you will find language saying there's another authorized, and you'll find any kind of language, the effect of it is then they leave the parties where they are and it's unenforced. But, you know, I mean, I think it's disturbing to think they could sort of pick and choose what they want to enforce and continue with the suit and all that. But is that before us on this interlocutory appeal? Because we're just looking at whether this has to be arbitrated. It could be that we say no, it goes back to the district court, and the district court ends up agreeing with you that there's nothing here because there was no contract, there was no tort duty because there was no contract, blah, blah, blah, and you win the ultimate dispute. But do we even have jurisdiction to go out in that field and start looking in it, or are we limited to the question of was there an agreement to arbitrate? Well, you could say that he's wrong as a matter of law. You could say we're not going to decide, but I certainly hope the opinion makes it clear you hadn't said he's right. But the main thing is that the whole case is trying to assert a claim that arises out of this contract. It is a direct benefit case. You say this contract because it seems to me the minutes do reflect we're going to hire an auditor for $48,000. Isn't that enough to give him a duty of reasonable care to do the audit in a reasonable and prudent manner? No. First off, nobody agreed to do an audit for $48,000. An audit is not an audit is not an audit. There are all kinds of audits. There's compliance audits, internal fares, internal controls. There was something on the minutes about an amount of money, a guy, and an audit. And the word audit. But it didn't say whether. So isn't that enough? Once I'm an auditor and I'm being paid to be an auditor, don't I have some duty to do whatever I do with reasonable care? I can choose not to do anything, but having chosen to do something, walk into the hospital and start looking at the books, I've got to do it with reasonable care. Why isn't that the case? Because first of all. Even if I was doing it for free. Well, first, well, no. In Mississippi, as the trustee admits at page 23 and 24 of the brief, an element of a claim for malpractice, you've got to show an engagement. And the engagement only comes from the engagement agreement. And I think everybody would have to agree that the liability of the professional malpractice has to arise out of what you were hired to do. If I was hired by a bank to represent in a car wreck case, I don't think they could say I should have given advice on securities laws unless they could make some showing I was hired to do that. Okay, but let's take that. You're hired car wreck, so all it says is Mr. Perry hired for car wreck. Right. And then they're going to sue you over this car wreck morphed into some huge, massive class action with a bunch of crazy stuff and whatever, and they're going to sue you for malpractice in that. Wouldn't you still have some sort of duty that would be enough that we wouldn't get into the details on a motion, on an interlocutory appeal of a motion to stay for arbitration? Well, let me start. If you say they hired me to do an audit, suppose my letter with the bank had said I'll do the car wreck, but I don't do anything related to securities laws. But they sue me because the contract says represent us on the car wreck. And this, as you say, morphed. Now, this didn't even morph. It seems to me you have to sue a professional on the engagement that he was hired to do. And in order to prove what we did, they've got to look at the engagement letter. See, that sort of, that really does, I mean, Judge Owen's question then is critical to this because if we are looking at whether there was an agreement to arbitrate, you know, that's a tough one on you because there's no spread on the minutes. If we are saying, well, there's an agreement here and what are the parameters of it, then it seems like that does go to the arbitrator. If there's some agreement, what are the parameters of it, whatever, whatever. And so it's where does this fit in the analysis? At what point in the stream are we looking at this question? Is it as a defense or is it as a, was there a contract at all? I think that they, you can take it one of two ways. Either they don't have a contract and they can't sue us because it's not in the minutes and there's no Mississippi law that lets them say we can take two parts that we write down in the minutes and make that a contract. If we had signed something that said it's $48,000 in an audit, then we would have agreed to that, but we never agreed to that and wouldn't have agreed to that. They could have said anything in there that might constitute a contract, pick out two terms and leave out eight. We didn't agree to a two-term contract. We agreed to intent of the parties of what you entered basic contract law. That's not the contract we agreed to. Had we made that contract, yes, but we didn't make that contract. But wouldn't they always say that in these minutes cases that aren't complete? I mean, isn't that inherent in the minutes situation, is you as the private contracting party need to be sure that all, if you had ten terms, that all ten and not just five? Because if you want to enforce one of the terms that end in there, you're not going to get to it. Well, if there are only five in there, nobody can enforce any of them unless the agency decides to ratify it. What case says that? Well, you look at the only cases where they have allowed anybody to enforce a contract where they didn't actually have the fiscal contract attached. He goes to cheat them, and it was a school teacher, and the minutes talked about hiring her for a year and the price and everything, and then they recite what the contract would have said, and the minutes said nothing other than what the contract said. And that is about the exception. And that's referred to in Thompson. And Thompson says if there's a material fact, you can't enforce it. And Wellness recites all of that and says it might not have to be spread on the minutes, but everything, there has to be sufficient there to determine the rights and obligations of the parties. And that's if they don't have, there is no Mississippi case, none, where they have ever enforced one where there was a claim that a material provision had been omitted from the minutes where they enforced the minutes. In fact, other than the ones I've mentioned in Cheatham, there are not many where they don't have the whole contract. That is very much the exception. And it's only if all of the terms are there. What do you do in a normal case? Do you attach the agreement to the minutes and incorporate it herein? Yeah. I mean, a board usually has minutes that say packages exhibit A. I mean, I'm on a board that minutes are like that. It would be a lot of work, and you can see why small town hospitals don't do it. I mean, so you say this person is authorized to sign the contract, you attach the contract to the minutes, and then you come back later and say, he signed it, we ratify it. I mean, is it a two-step process? Well, the way it happens normally is the agency, you sign it, the agency adopts it, they attach it to the minutes. If the agency leaves it off, they can come back years later and attach it and ratify it. But if they don't, there is no contract. There is no we're going to enforce a couple of snippets that happen to be in the contract in the minutes. That's never a contract anybody intended to make. So you're saying if your guy was trying to sue the hospital on this contract, he'd be out of luck. But with the hospital trying to sue him, the hospital either accepts the contract or walks away from it if it doesn't get to have both. That's exactly the rule. Okay. The case is that the judge, can I go a couple of minutes into my rebuttal? Let's save some time. Okay. Good morning. Brent Berry. I represent Ken LaFolt, the liquidating trustee of the Natchez Regional Medical Center Liquidating Trust. Judge Hayes, if I may, I want to actually start by answering a question you posed, which is how far do we go into the merits of this case? And the answer is not far at all. Bank One acceptance instructs that we basically go through the two-step process to determine whether indeed there is an agreement that includes an arbitration provision, and if so, whether this dispute falls in the scope of that provision. Here that question plainly is answered in the negative. One thing I do think we need to clarify at the front end, though, is to remind the bench that we have an engagement letter only for the 2009 audit, as to which there's a cryptic reference in the minutes. There is no reference in any minutes or any public records purported to be minutes concerning the audits for 2010, 11, 12, and 13. The notion that somehow by having a cryptic reference to 2009, we incorporate all of these engagement letters. No, I think what he's saying is you can't have it both ways. I mean, he's saying if he was going to sue Mississippi, let's say they didn't pay his fee and he's suing for the fee, they could say, ha-ha, not spread on the minutes, have a nice day, and he'd be out of luck. But since you're the plaintiff, I mean as the trustee standing in the shoes of, okay, we'll just talk about the hospital. Since the hospital is the plaintiff, they can't just march in and go, yeah, we had a deal, but we don't really know what the terms are and we'll just kind of forget about that. They either have to accept the deal, which is the engagement letter with all the terms, or they had no deal and they can walk away from the audit fee and all that, but they can't affirmatively sue on it. How do you answer that? Because that seems like a good argument. Fortunately, the Mississippi Supreme Court has directly answered that question and did so in Wellness v. Pearl River City Hospital. The court will recall there that the minutes evidence that the hospital, community hospital like Natchez Regional, had engaged Wellness, Inc. to renovate all of these suites. It specified generally the type of work which would be done. It specified the amount which would be paid for the work. Subsequent minutes detailed how that amount would be financed. Ultimately, the hospital concluded the work was imperfect, delinquent, and filed suit, alleging, among other things, breach of contract. Wellness removed after remand and moved for arbitration. The court noted that all the court can do, enforcing these agreements, is to look to those provisions that are set forth or spread across the minutes, that there was nothing in these minutes concerning the arbitration provision. What in these minutes defines the scope of the auditor's duty? Nothing. Okay, then. How are you going to prove the scope of the auditor's duty? I'm going to look to the financial statements that were produced by the auditors. You've got to show that he had contractual duty to do that. I can show that they did work for us, for which we made payment. You had to have a contract in some way or another that spread on the minutes. Now, how are you going to prove that? I am going to prove that through the actual work that was done in the same way that a party who does not necessarily contract with the auditor can sue on the breach of duty. You can say, I don't have a contract with you to do that, and you can't prove it otherwise. Well, he plainly has a duty to provide accurate materials. He's providing me with financial statements. What accurate materials? The minutes say nothing about financial statements. Now, how are you going to prove the scope of his engagement? I'm going to prove the scope of the engagement by the reality of the services he provided. So you're going to ratify. You agreed that there was a contract for services. I agreed that there was an engagement for services. That's a contract, is it not? It is a contract. Okay, so to me, then, you're ratifying a contract. Well, that may be. I may be ratifying the engagement. We certainly don't dispute that in the complaint, but the Mississippi Supreme Court tells us that those provisions that can be enforced. I don't see what we can enforce from your minutes. Well, you can enforce that we engage them. There was an audit. Okay, that's all you can infer that you engaged in. There's nothing in the minutes that you can enforce as to the scope, as I see it. Well, that, Your Honor, I believe is not. So it seems to me that either you have to say there's a contract and we're looking to the engagement letter to get to the scope, and if you do that, if you say, well, the minutes don't allow us to get to the engagement letter, you're going to either the whole contract or not, not just the arbitration clause. I disagree, Your Honor, because that's not what the Mississippi Supreme Court tells us. Mississippi Supreme Court said nothing about an arbitration clause. The wellness decision specifically addresses the arbitration clause. That's what that case concerns. As long as they're not relying on an absent contract to fill in the duties, you're going to renovate the building and you're going to put up tiles on all of these walls, and then you didn't or you didn't do it right. That's in the minutes. Here, there's nothing that says what he's going to do besides an audit. There's no scope, because audit scopes are a big, big, big, big, big, big deal. Which we do not disagree. And so whether you are relying on management to give you records and you're just looking at whether the numbers add up, whether you're supposed to go behind what management did, all of this is what these auditors live this, and it's the critical thing to them is how far are they supposed to go versus what they're given versus what they go look for. And there's none of that here. Nor, for that matter, is there any in the one engagement letter that's referenced. What we will have is a series of expert opinions as to the nature of a public audit. It all goes to the point that there is a contractual agreement. It seems to me once you admit that there's got to be a contractual agreement, you're challenging either the contract as a whole or not. That is not what the Mississippi Supreme Court instructs. Well, I don't read the cases the way you do. With all due respect, Your Honor, we look to the cases that consistently say that the court can enforce those provisions that are set forth in the minutes. In the minutes here, we all agree with that. And here the minutes say there is an audit for one year, for 2009. Beyond that, the minutes are entirely silent. There are no references in any minutes whatsoever for 2010 through 2013. Do they then sue in quantum merit if they don't get paid? They cannot do that. There's actually no claim for quantum merit under Mississippi law. So as the Supreme Court recognized repeatedly, this rule may cause a substantial injustice. We have had repetitive cases in Mississippi where because the party who's contracting with a public agency did not meet what the court has defined as its duty to ensure that the minutes completely and comprehensively reflect the terms of the agreement, the party loses the right to be paid. Here we're only talking about what form we're going to be fighting it. Most recently in the Butler decision, for example. There, there was nothing in the minutes concerning additional work under the contract for additional painting and plaster work. The minutes detailed all the other work that was to be done. The party sued for the $38,000 for that added work, and the Mississippi Supreme Court affirmed the district court saying no, that is not enforceable because that specific provision needed to be in the minutes. But then could the governmental entity in that case have sued for failing to do the painting and all that? Let's say they paid the $38,000 up front, and then the painting and all that wasn't done that's not in the minutes. Could they have sued for that? Because that's your case. They plainly could have sued for work asked for by the agency. The agency can sue. So the agency is not bound by the minute rule, only the other party. So you disagree with his argument that both sides are bound by the minute rule. And indeed, indeed, the courts have consistently refused, refused that estoppel has any play here. My point wasn't an estoppel one. It's whether the minute rule applies to both sides, and you're saying no, it only applies to the private party and not to the government. That is correct. And who says that? Which case? Well, I think the wellness case says that. You think wellness says that. Okay. And said so as recently as 2015. Urban development first, decided by this court. Because that would be case determinative here because it would wipe out his point that, well, you kind of can't have it both ways. Because they can have it both ways. They can have it both ways. That's your argument. Okay. At least we're clear. Yes. What a great position to be in. You get to make the arguments. You can have it both ways. That is correct. Okay. And that is why the ‑‑ I'm sorry, Your Honor. I mean, I just cannot understand why anybody would do business with a Mississippi nonprofit with this kind of legal ‑‑ Well, I would submit it really isn't that complicated. I mean, the fact of the matter is that their duty to put this on the minute could have been readily satisfied had they simply said, we insist these minutes are going to say that we are adopting an engagement letter dated such and such a date, a copy of which is attached here too as Exhibit 1, and all provisions are expressly incorporated herein. That would have been sufficient. They chose not to do that. It simply says you're going to have it on. It's going to cost $48,000. And for the following years, they did nothing whatsoever. Nothing whatsoever. On those circumstances, I can ‑‑ Okay. If we were to disagree with you on the have it both ways theory and say it does also bind the governmental entity, then you would lose on 10, 11, and 12 because there's like zero obligation to do anything. We don't even have to talk about how broad the audit and what does audit mean and all that because there's no obligation to do anything. So Mississippi couldn't sue on those years at all. I would disagree with that. I have financial statements from all these parties. They did not come out of thin air. There is a duty arising from the provision that works. This is a matter of proof, and this is what I keep coming back to. You say there is a contract, and we're going to prove its terms through expert testimony. Well, they can put on expert testimony that says everybody in the business puts an arbitration clause in their contract. This is a ‑‑ your proof goes with the contract as a whole, and the minute rule, all your arguments, the minute rule seems to me to be tied up with the contract as a whole, not the arbitration clause. I would disagree, Your Honor. I know you do, but I don't think logically. My proof will also be of the work that was done or not done. He's entitled to put on counterproof as to what the agreement was, which contains an arbitration clause. The proof goes with the whole contract, not just the arbitration clause. He may well be permitted to put on proof of the scope of the duty and the scope of the services he provided. That's entirely appropriate. And that indeed is ‑‑ No, you say because it's not in the minute rule. He can't talk about limiting his scope. I have not. He can't inform ‑‑ If I said that, I would withdraw that because I certainly anticipate ‑‑ I'm having a hard time seeing how the minute rule works in this situation. You get to prove what the terms are, but he doesn't. No, I think for every year after 2009, I think it's my burden to show the scope of the work they actually performed and what the applicable standards are under the AICPA standard and those applicable to gas for a governmental entity. That's my obligation. And he's going to in turn have his folks show up and say, no, you don't do X, Y, and Z. He was a mere volunteer at that point. I mean, under the minute rule, he was a volunteer. Well, he was paid. He was paid. Okay, but illegally because there was no contract. I mean, he's just a volunteer showing up, and then they decide to reward him with some money. I mean, that's your theory of this because there's no contract governing this at all in your theory of the world. So unless we buy in the I-can-eat-my-cake-and-have-it-too world that you are articulating, which may be right. I don't know that that's how I read it, but it may be right. But unless we buy into that, you're basically saying that he can – that you have a contract that you're just making up as you go along, and it only – no, if we don't accept your version of the world, you don't have a contract, and this guy is just a volunteer who showed up and messed up the books, and y'all's payment to him was also gratuitous. That's the world we're in unless we accept your version of the cake and eat it. Well, I don't think that's consistent with either the terms of engagement or the reality of what occurs in this or every other audit. I mean, the reality is that the audit simply taught – the engagement lawyers taught broadly that they will provide audit services for the coming year. There is then the implementation of those when the audit team arrives, generates its audit work papers, interviews, presumably, members of management and the board, and then ultimately generates a financial report that says what it says. What gives him – when he goes in and does all this, what obligates him to do this with reasonable care? As a matter of law and the custom of the practice. But I thought the matter of law came from there being an engagement. His duties as an auditor arrived directly from the standards set forth for CPAs under gas and gap. Depending on the scope of the engagement. No doubt. Okay, but the Mississippi law requires – I agree, he could be disciplined by the board of auditors or whoever, even if he did completely gratuitous work and all of that. But that's not what we're talking about. We're talking about professional – what is your cause of action called? My cause of action is accountant malpractice. Okay, and so you would have to show the existence of a professional relationship, acts constituting negligence of proximate cause of injury, right? Right. This is from your brief, as he said, on page 23. Absolutely. Okay, so where does the existence of a professional relationship come from? You're saying it comes from the actions, and therefore you can rely on the actions and you don't need anything in the minutes. But he needs something in the minutes because he can't rely on the actions that includes your CEO or whoever it was signing the engagement letter. Well, no. He says he simply – he can certainly rely upon the actions in defending the work he performed and fully will. Let us take it as an illustration. This case – I'm sorry. He can rely on the written engagement letters? No, I said he can rely upon the actions were actually taken. The question posed to me by Judge Haynes is what does he do to defend himself? Well, the board didn't ratify any of the actions actually taken. That's correct, but I've – Not in the minutes. The question on the substantive elements, and we go back to the question of evidence, which you have introduced, is we are debating in this case fundamentally systemic failures in the accounting area. But we don't know what the systemic failures are without reference to the scope of the engagement. Certainly we do. They are evidenced by the acts or omissions of my accounting department. Those are not – minutes are not ratified by the board. They're not in the minutes. The minute rule applies. She was asking me about the merits of the cause of actions. I understood it. And I am required to show there was a breach of the duty imposed on me. Well, what I'm saying is if we're going to talk about relying on actions, there was an action here. Somebody at the hospital signed the engagement letter. Right. Okay, that's part of the actions that also include that they walked in and started looking at books. What if they demanded to talk to somebody with knowledge of the books and the hospital presented somebody who turns out to have been a liar and a fraud themselves? Isn't that part of the actions? So we have a lot of actions, but there's only one action you don't like, and that's the action of the engagement letter. So you want the case to be about all the other actions. I would assume you would agree that if you all, if the hospitals proffered some fraud fees or lied to the auditors and therefore they got the audit completely wrong, that that would be part of the case, that they could talk about that. Well, that's not in the minutes either. Of course not. But that speaks to the actual substance of the services performed. Well, so does the engagement letter. The engagement letter that we're focused on here is not. We're talking about forum. We're talking about whether there's an enforceable agreement as opposed to the court breaching their duty of care to the hospital. But the whole engagement letter is part of the actions. It's part of these actions that you're wanting to rely on. It may well have evidentiary value but cannot be enforced for purpose of requiring an arbitration because that provision, we're told by the Mississippi Supreme Court, had to be specifically set forth on the case. An arbitrator can decide that just as well as a court. This court has instructed, as has Mississippi, that when the question goes to the fundamental issue of whether there's an enforceable agreement, it is for the court to decide. This is an agreement, an engagement letter, not just the arbitration agreement, the engagement letter. That's what he's defining as the agreement. That is the only agreement here. Rent-a-Center, the case they principally rely on, of course you'll recall. Rent-a-Center goes exactly to this point. Rent-a-Center, their language said specifically that the interpretation of the agreement was reserved for the arbitrator and not to any judge. That's not the case here. Indeed, the language even they rely on simply says if there are disputes, they will subject to arbitration without any reference as to who is to interpret the contract. The threshold issue for taking this out of the hands of the court is defined by this court and the Supreme Court has not been met here. The final analysis. This court can only order arbitration if it eviscerates the minute rule or adopts an exception that eviscerates the rule. That is not consistent with its obligation to the jury. I would ask the district court to be affirmed. If the panel has no further questions, I will see the remainder of my time. Thank you, counsel. Mr. Barrier and I very much disagree on what Wellness said. Thus, the court cannot enforce the contract, much less the mediation crop. That meant the entire contract. Now, that's what we said in our brief. He says, well, no. We now, I did not know this had come up, but the trial court has ruled there is no contract based on just what I said, and I would like to supplement the record in the next day or two with a copy of the trial court's ruling on it. Essentially saying there is no contract. You can't pick bits and pieces. And that was what Mr. Barrier. Doesn't that end the case then? Well, it seems to me, well, it could end the case in a lot of different ways. If they haven't ratified it, they can't sue on it. If they have, they can. Because I'm looking at this audit letter, I mean the engagement letter, and there's a lot of responsibilities on the hospital that are integral to the audit, which is that you're going to produce, you know, reasonable books and not some set of cooked books over here, and then you give us your fake books, and all of that being, I mean, an auditor can only do as much as really the client sort of lets them do to some degree. Not totally, but to some degree. And there's a big, long list of all of that. And I guess your counsel opposite is saying they can ignore that and still sue you for not doing your job, even though they may very well not have done their job. And it's worse than that, because if you look at the gist of their complaint against the accounting firm, it's in paragraphs 26 through 30, it basically said, you should have done more testing of internal controls. And then they allege in paragraph 26 that Horne was engaged to ensure that appropriate controls were in place. That's in direct contradiction to the engagement letter. The engagement letter here is a standard engagement letter. It's pretty much a standard. I mean, they all fit. All of them. This is very typical. Very typical. And it does say what it will always say, if you do an integrated audit, an audit is not an audit is not an audit. They're integrated audits, they're audits of the financial statements to express an opinion, they're internal controls. This one says we're not doing an internals control audit. Yes, but that's true, it does. But there is usually, when the letter finally gets produced, it does talk about internal controls, all the while saying, but we weren't hired to evaluate the internal controls. That's exactly how this one. Nothing came to our attention, et cetera. And that's exactly what the audit letter, the engagement letter says. It says, we will express an opinion on the fairness of the financial statements prepared by management to see if they fairly represent. In the course of that, if we come across a problem with internal controls, we will advise you. We will tell you about it. That's exactly our obligation. We're not doing a review of the adequacy of your internal controls. Exactly. That's a standard letter. What's at issue here, that's standard language. They could have hired us to do an internals control audit, and for the right amount of money I'm sure that we would have been glad to do it, but they just didn't hire us to do that. That is what this case is about in terms of why it's intertwined. And so is it your understanding that if you go to trial in this case in the district court, that you will be allowed or not allowed to argue that point? Because that seems kind of important. You don't know. With all respect, Your Honor, I don't know, and that's what scares the heck out of me. We've, you can't, there is no, I just disagree, and I think wellness is the only case he cited for it, that the government can pick and choose. There is no such claim. You asked Judge King about quantum merit. There is quantum merit in Mississippi. You just can't get it if the minutes rule applies. But for the same reason, the governmental entity can't enforce pick parts to, there is no case that allows that. And finally, I guess we might as well mention emburgia, which says that all the contract clauses have to be treated the same. I should have cited May against Higboon, 372 Fed 3rd, 757, which Judge King anticipated that result. The trustee's contract is going to be predicated on, we've got two terms, 48,000 and audit. Can you give that slide again? Yes, 372 Fed 3rd, 757, 2004, anticipated emburgia by a good number of years. The problem is I didn't get it right. You got it right, Judge. I guess that's how I would describe some of my failures. I anticipated. At any rate, you can't try this case on those two snippets. You're going to have to have a trial on all the things you looked at. You can't have a trial without knowing what we promised to do. If you're going to not do that, you can't have a trial. Are we just going to say the jury? Well, it's heads I win, tails you lose. That's his version. And, I mean, that would be a great case. I would love to try that one as the lawyer for that party. I think I'm out of time. Thank you, Your Honor. Thank you, counsel.